UNITED STATES DISTRICT COURT

DISTRICT OF COLUMBIA

Case: 1:17–cv–00378
Assigned To : Moss, Randolph D.
Assign. Date : 3/2/2017
Description: Habeas Corpus/2255 **(G–DECK)**

TIMOTHY PETERSON
_____
Petitioner

VS

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
_____
Respondent

)
)
)
)
)
) Criminal case 10-00183-01
)
) PURSUANT TO
) 28 u.s.c 2241
) CHALLENGE TO CONSTITUTIONALITY
) OF STATUTE
)
)

---

COMES NOW, Petitioner, TIMOTHY PETERSON   does   hereby   enter this Petition of challenge regarding Title 18 U.S.C. § 1-5037, as enacted in the 80th Congress, June 25, 1948 (2nd Session) by President Harry S. Truman. Pursuant to 28 u.s.c. 2241.

## JURISDICTION OF THE COURT

Pursuant to Title 28 U.S.C. § 1332, Diversity of Citizenship, the Petitioner is accessing Article III authority, to resolve the injury alleged, as both Parties are (were) in different states.

## VENUE

Venue for this case is appropriate based on "Public Citizen" v. United States District Court for the District of Columbia, 376 U.S. App. D.C. 222, 486 F.3d 1342, 1343 (D.C. Cir. 2007) This

1


Mail Room

FEB 2 7 2017

Angel...
U.S. Dis...ct Court  D...ct of Co...

group has made it clear from numerous cases in this Court, that the Venue is appropriate for the argument at hand.

## ARTICLE III AUTHORITY

Pursuant to Article III requirements, relying on: Already, LLC v. Nike Inc. 586 U.S. 133 S.Ct 721, 184 L.Ed. 2d 553, 560.... "an actual controversy must exist through all stages of litigation" and further: "A party has standing only if he shows that he has suffered an injury in fact, that the injury is fairly traceable to the conduct being challenged, and that the injury will likely be redressed by a favorable decision." Wittman v. Personhuballah 136 S.Ct. 1732 (March 2016).

Certainly this is a case and controversy of mass proportions, and this reader will require extensive research to address the concerns of the Petitioner fully. Following are the facts further in support of the outlined argument thus far.

According to the Supreme Court in Plaud v. Spendthrift Farm, Inc. 514 U.S. 211, 218, 115 S.Ct 1447, 131 L.Ed 2d 328. cites: "necessarily, that endowment of authority blocks Congress from 'requiring Federal Courts to exercise the Judicial power in a manner that Article III forbids.'" Lacking in Congressional intentions thru written laws, Constitutionally passed, thru the House with a full Quorum, how can our current structure be anything less then this as addressed as follows:

Petitioner does hereby request Pursuant to Rule 38(b)(1) and (2) a trial on the merits by jury, and the demand is filed in

accordance with Rule 5(b) and should be docketed for such request upon this filling.

## RULE 5.1 REQUIREMENTS

Pursuant to Rule 5.1 Petitioner is required to "serve notice and paper on the Attorney General of the United States if a Federal Statute is questioned". It is Petitioner right and responsibility to do so. Additionally under Rule 5.1(b), "the Court must, under 28 U.S.C. § 2403, certify to the appropriate Attorney General that a statute has been questioned." It is the expectancy of the Petitioner that this Court will follow this Rule and Statute of Law.

## BASIS FOR CHALLENGE

Pursuant to Article I, Section 5, Clause 1 in part states: "Each House shall be the Judge of the elections, returns and qualifications of its own members, and a Majority of each shall constitute a Quorum to do business."

It is on the basis of above, that this Petition is entered and the challenge is made as to Title 18 U.S.C. § 1-5037. Recently the Supreme Court in Nebraska v. Colorado, (March 2016) 136 S.Ct 1034 cited, Cohens v. Virginia, 19 U.S. 264, 6 Wheat 264, 404, 5 L.Ed 257 (1821)(Marshall, CJ) stating in part: "[w]e have no more rights to decline the exercise of jurisdiction which is given, than to usurp that which is NOT GIVEN [emphasis added]." It is on this principle that Petitioner enters this challenge; If one man President Harry S. Truman, in fact as the records show, " enacted criminal statutes" without the support of

a full body Quorum of each House (as the following records will prove) then what occurred, is better stated by the Supreme Court ruling in Plaut v. Spendthrift Farms Inc. 514 U.S. 211, 219, 115 S.Ct 1447, 131 L.Ed 2d 328 (1995) stating in part: "the framers of our Constitution lived among the ruins of a system of intermingled legislative and judicial powers." Further in January 2016, the Supreme Court cited the following from Markazi v. Peterson 136 S.Ct 1310; As Hamilton wrote, quoting Montesquieu, "There is no liberty if the power of judging be not separated from the legislative and executive powers." The Federalist No. 78 p. 446 (C Rossiter ed. 1961) See Montesquieu, The Spirit of the Law 157 (A. Coher, B. Miller & H. Stone ed. 1989 (Montesquieu)).

The Petitioner is relying on the Judiciary, to apply a separate and non "intermingled legislative and judicial powers" approach to ruling on the facts, thru finding of such, and law to support it.


### FUNDAMENTAL FACTS TO ARGUMENT

Petitioner enters the following Fundamental Facts to the Records, thru the brief, and documented records of Congressional Journals; and in relying on such, the Petitioner utilizes the following statutes in support: 28 U.S.C. § 1736. "Congressional Journals" states in part, "Extracts from the journals of the Senate and the House of Representatives" ... "shall be received in evidence with the same effect as the originals would have."

Further in support, 28 U.S.C. § 1733 states in part, "(a) Books Records of accounts or minutes of procedings of any department

or agency of the Unites States shall be admissable to prove the act, transaction or occurence as a memorandum of which the same were made or kept."

In otherwords, the Petitioner intends to rely on the Congressional records as support and proof of this argument, and will alert the Court that any reliance on "existing case law" is in violation of the above.

## CONGRESSIONAL DIFFERENCES

Petitioner aver to the following facts of the Congress at the 1947 Sessions: "The argument [336 U.S. 339] is based on Committee Repot accompanying a bill approved by the House during the 80th Congress, but not acted upon in the Senate." New York v. Saper 93 LED 710, 336 U.S. 328. This Bill as discussed was HR Rep. No. 308, (Title 28 Judiciary) which we see was later passed after revisions; "you will remember the discussion between the members of the staff of the Committee and the Department last month at which the Department made some suggestions with reference to minor corrections of errors and omissions then in the draft of the bill being considered by your committee." and further "I am advised that this conference agreed upon a number of corrections and changes and that these corrections have now been incorporated in the bill with the one exception of the [Tax Court] portion ... See 93 Cong Rec 8385." Cited from letter between Congressman Michener to Chairman of the Committee of the Judiciary, April 17, 1947 within the Case of United States v. National City Lines 93 LED 1226, 337 U.S. 78.

Further within the National City Lines case, we see that Title 28 did in fact pass thru legislative, regarding the aforementioned revisions; "The revisors notes appeared in House report No. 308, 80th Congress, First Session, which was published in April of 1947. The Code Revision was initially passed by the House in July of 1947. With Revisions, passed by the Senate on June 12, 1948 and again by the House on June 16, 1948."

This supports that a full and complete passing would include the revisions, of any such bill not duly enrolled by the proceeding party (House) after the Senate made its changes. In otherwords , this Bill, (308) was properly passed, where HR 3190 (Title 18) was in fact not.

## TRUMANS INTENT AT TIME IN QUESTION

During the First Session of the 80th Congress, TRUMAN wanted the Congress to grant authority to access manufacturing plants under the War Acts: See Youngstown Sheet & Tube Co. v. Sawyer 96 LED 1153, 343 U.S. 579 in support, which states in part, "When the Taft--Hartely Act was under consideration in 1947, Congress rejected an amendment which would have authorized such governmental seizures in cases of emergency." TRUMAN, in fact designated an Executive Order to "get around" this Congressional denial of authority, which is the aforementioned case argument. which the Supreme Court ruled TRUMAN was unconstitutional in his actions. See Youngstown Sheet & Tube Co. v. Sawyer.

Further in support of the Challenging environment our President at the time had, the Petitioner refers to: Christoffell

6

v. United States 93 LED 1826, 338 U.S. 84 in which the Supreme Court found, that a "Quorum must be present and counted on the record for a committee to be valid." (Historical note: Christoffell, was accused of Communist affiliations, and lied to the committee on March 1947, and was found to be perjured in his testimony. The Supreme Court overturned his conviction, due to the fact that he lied to "less than a 13 member committee" (Quorum).

The Petitioner relies on these as well as many additional facts, that show President TRUMAN did in fact have the specific intent to do what was necessary, to get things done. Petitioner will remind this Court, that President TRUMAN "pushed the button" on Nagaskai, and Hiroshima and the ensuing "end of the war" thru such measures.

## MISSING TEXT OF STATUTES

Petitioner offer the following facts or records, in support of "text missing": "We must do our best, bearing in mind the fundamental canons of Statutory construction that words of a statute must be read in their context and with a view to their place in the overall statutory scheme." See, Utility Air Regulatory Group, 573 U.S. a___, 134 S.Ct 2427, 189 L.Ed 2d 372. In this challenge, the records reflect that allegedly an June 25, 1948, over 5,000 statutory laws were enacted and the "text" of each was clear and delineated on pages 683 thru 840 of the stat of the 80th Congress. In otherwords, 157 pages of Congres Journal

notes held Statutory Construction for 5,000+ laws? Not Likely. As a reference, during the Bush administration, from January 2003 to February 2003, on 460 pages of Congressional Journal Notes, President enacted into law, 204 laws. An average of over 2 pages per statutory construct. Exhaustive research shows that in June 1948, currently shows 683 Title 18 Statutes that hold the June 25, 1948 enactment date. Not all are "active" at this time, but all showed to be enacted on June 25, 1948. That would still mean at least 4.37 statutes per page of Congressional Journal records. A bit hard to believe, considering that many statutes take up to 1/2 to 3/4 of a page.

In support of this requirement, the Petitioner makes reference to the general attitude around Congress in 1947. Citing from King v. Burwell 135 S.Ct 2480; "CF Frankfurter, some reflections on the reading of statutes, 47 Colum, L.rev 527, 545 (1947)(describing a cartoon in which a Senator tell his colleagues "I admit this Bill is too complicated to understand. We'll just have to pass it to find out what it means." In order for even 650 statutory constructions to be textualized and understood, they would require being written. Petitioner avers that in fact they were not written, as they were not passed by Congress on May 12 1947, and therefore, couldn't have been enacted by President TRUMAN in June of 1948. According to the congressional records, only 44 votes total (38 yea and 6 nay) counted on H.R. 3190 on May 12, 1947. Over 215 yea votes were recorded for Title 28 in its passing in July of 1947. And all the members names who voted are on the record. On H.R. 3190 vote, in May of 1947, no names are on the record, and only 44 votes yea

and nay total. Then, therefore, this Petitioner makes the claim, that this injury in fact, required by Article III mandated authority, for the envoking of judicial authority, is hereby enacted due to an illegal vote, in the face of no "Valid Quorum", in violation of the Quorum Clause of the United States Constitution. In Christoffell, aforementioned, the Supreme Court held that he was entitled to a "Quorum" in order for his perjury charges to be valid. Is the Petitioner not also entitled to the same standard as to his enactment of his statutory law? Professor Manning concluded, "Article III, In large measure, reflects a reaction against the practice of legislative interference with state courts." Manning response, Deriving Rules of Statutory Interpretation from the Constitution, 101 Colum L.Rev 1648, 1663 (2001) Cited from Bank Markazi v. Peterson, 136 S.Ct 1310 (Jan 2016).

## BILL H.R. 3190 STILL "OUT COMMITTEE"

In Idaho Sheet Metal Works v. Wiritz, 15 LED 2d 694, 383 U.S. 190 has the following to say about H.R. 3190: "The bill reported out by the House committee and the substitute measure first debated by the House adopted the Administrators basic proposal, but a further substitute backed by an opposing coalition and introduced as an amendment during the debates finally prevailed and was sent to the Senate."

Now, Petitioner clearly asks, and meaningfully expects an answer to one simple question. If H.R. 3190, allegedly passed and lawfully enacted in the 80th Congress was final.........then how could that same bill be "out committee" and still under

9

construction in the 1st Session of the 81st Congress. Almost one year after it was "enacted into law" by President TRUMAN ?

Footnote 8 of Idaho Sheet Metal Works states: "The bill Reported out of committee was H.R. 3190, 81st Congress, 1st Session." When Congress convened in 1949, a number of bills were introduced to amend the Act in various respects. As mentioned before, the bill reported out, was our bill in question. H.R. 3190 (Title 18).

## DETAILED FACTS FOR THE RECORD

Petitioner now leaves the rest of the brief, to support the facts required to fully detail out the Congressional errors that were and are supported by records of journals. When an error of mass proportion, is allowed to persist for this many years, we can see the effects of Government "overreach". Marbury v. Madison 5 U.S. 137, 1 Cranch 137, 177 L.Ed 60 cites "Article III of the Constitution establishes an independent Judiciary with the "province and duty, to say what the law is" in particular cases and controversies.

## ARGUMENT BRIEF

Petitioner requests this Court to grant this writ of habeas corpus and declare unconstitutional and void abinitio: Public Law 80-772 which purported to enact Title 18, Unites States Code, Act of June 25 1948, Chapter 645, 62 Stat. 683 et seq., and (2) more specifically, Section 3231 thereof, 62 Stat. 826, which purported to confer upon "the district courts of the United States...original jurisdiction...of all offenses against the laws of the United States." These legislative Acts violated the Quorum Clause mandated by Article 1, & 5 Cl. 1 of the Constitution of the United States, rendering the enactment void ab inito.

The federal district court which rendered judgement and ordered commitment/constraint of Petitioner, under Section 3231, lacked jurisdiction and, therefore, the judgement and commitment order and any indictments are void abinito. Any indictment would have to be filed under the 1909 (prior existing) statute, which would be void under Fair Warning Doctrine.

To imprison and/or detain a Petitioner under void judgements and commitment orders is unconstitutional and unlawful. See 18 USC § 4001(a): "No person shall be imprisoned or otherwise detained except pursuant to statute of the United States." As such, the Petitioner must be discharged from his present illegal incarceration immediately and declared legally innocent and that any charges/restitution are illegal and must be voided.

## FACTS AND LAW THAT HAVE ALREADY BEEN JUDICIALLY NOTICED IN THE SUPREME COURT AND APPLY TO ANY COURT NOW

In David Moleski v. United States, 14-571, Supreme Court, Judicial notice was taken of the facts and law of the case. The case docketed 11/7/14; Government waived 11/21/14. Judicial notice was taken on 12/30/14 and is required to be accepted by any court.

## 1. Courts May Take Judicial Notice Pursuant to FRE 201

Courts may take judicial notice of facts that are "not subject to reasonable dispute," such as when they can be "accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). Petitioner seeks judicial notice of public records which can be confirmed by reference to publicly available information. Judicial notice of such documents is appropriate "at any stage of the proceeding," 201(d),

## 2. If it is Subject to Judicial Notice, Then it is Taken as True

In Veney v. Wyche, 293 F.3d 726,730(4th Cir.2002), citing Sprewell v. Golden State Warriors, 266 F.3d 979,988(9th Cir.2001) "Nor must we 'accept as true allegations that contradict matters properly subject to judicial notice or by exhibit."

In Hutchinson v. State of Indiana, 477 N.E. 2d 850,854(Sup.Ct.Ind.1985) "Judicial notice excuses the party having the burden of establishing a fact from the necessity of producing formal proof."

## 3. Judicial Notice is Proof being Superior to Evidence

In State v. Main , 37 A. 80,84(Sup.Ct.Err.Conn. 1897) "Judicial notice takes place of proof, and is of equal force. As a means of establishing facts, it is therefore superior to evidence.

In its appropriate field, it diplaces evidence, since, as it stands for proof, it fulfills the object which evidence is designed to fulfill, and makes evidence unnecessary." "In Southern Cross Overseas Agencies v. Wah Kwong Shipping Group Ltd., 181 F.3d 410,[426](3d Cir.1999), we noted that judiacial procedings constitute public records and that courts may take judicial notice of another courts opinion. Id. at 426. * * * We explain that a court may take judicial notice of another court's opinion to use it as proof that evidence existed to put a party on notice of the facts underlying a claim.[Ibid.Southern cross at 428]."

12

In Beadnell v. United States, 303 F.2d 87-89(1962) "Proof of facts judicially known was unnecessary. Fn %(cites omitted)." See Mills v. Denver Tramway cotp., 155 F.2d 808-811(10th Cir. 1946)

4. Judicial Notice is Taken of the Facts in this Case.

Petitioner request that the Court take Judicial Notice of the following as already Judicially Noticed in the Supreme Court.

A. 93Cong.Rec.5049: There is no recork of any quorum being present during the MAy 12, 1947 vote on H.R. 3190 Bill in the House of Representatives.

B. Verified letter from Jeff Trandahl, Clerk, U.S. House, 6/28/2000 to Charles R. Degan, Dear Mr.Degan: Thank you for your letter requesting information on Title 18. In response to your inquiry, Congress was in session on June 1,3,4, 7-12 and 14-19, 1948, however, Title 18 was not voted on at this time..."

C. Verified letter from Karen Haas, Clerk, U.S. House 8/30/2006: "Yes the Speaker of the House did sign bill H.R. 3190 in the absenseof a quorum.

D. Verified letter from Karen Haas, Clerk U.S. House, 9/11/2006: "After conducting a thorough examination of the journals, I found no entry in the journals of the House of May12, 1947 vote on Bill H.R. 3091....The senate took no action on H.R. 3190 bill prior to the December 19, 1947 sine die adjournment. Page 5049 of Congressional record, 80th Congress, 1st Session indicates 44 Members

voting 38 to 6 to Amend H.R. 3091 on May 12, 1947. Therefore, by counting the total YEA and NAY vote a quorum was not present. According to House Rules, when less than a majority of a guorum votes to pass a bill, the journal must show the names of Members present but not voting. I found no record of any names for May 12, 1947 vote..."

E. Verified letter from Nancy Erickson, Secretary of the Senate, "....Thank you for your resent letter requesting confirmation on the status of H.R. 3190 from 80th Congress. I asked the Senate Historian's Office to review the correspondence you enclosed, and they were able to verify that no action was taken by the Senate on H.R. 3190 prior to the December 19, 1947 sine die adjournment.

F

F. Verified letter from Lorraine Miller, Clerk, dated August 24, 2010: Thank
you for contacting the Office of the Clerk. Our office has conducted research
of the House Journal and the Congressional Record in regards to H.R. 3190 and
the voice vote that was taken on May 12, 1947. After researching these
official proceedings of the U.S. House of Representatives we have been unable
to find the names of the 44 members who responded to voice vote...: This
letter is in the Clerks Library.

C. Independently verified Memorandum Harley Lappin from Harley G. Lappin: "from
'Harley G. Lappin' Harley.lappin@usdoj.gov. Sent: Monday, July 27,2009 3:17pm.
Logo for U.S. Department of Justice.

"Attention all Department Heads, there has been a large volume of
inmate Requests for Administrative Remedies questioning the validity
of the Bureau's authority to hold or classify them under 18 USC §§4081,
et seq.,(1948). On the claim that Public Law 80-772 was never passed
or signed in the presence of a Quoram or Majority of both Houses of Congress
as required by Article 1, & 5, Clause 1 of the Constitution. Although
most courts have, thus far, relief on Field v. Clark 143 U.S 649(1892)
to avoid ruling on the merits of these claims, however, there have been
some which have stated that they were not bound by the Field case, but
these cases did not involve any Quorum Clause challenge.
So out of an abundance of caution, I contacted the Office of Legal
Counsel, the National Archives and the Clerk of the House of Representatives
to learn that there is no record of any quorum being present during the
May 12, 1947 vote on the H.R. 3190 Bill in the House (see 93 Cong.Rec.
5049) and the record is not clear as to weather there is was any Senate
vote on the H.R. 3190 Bill during any session of the 80th Congress. There
is only one Supreme Court Case that says In order for any bill to be
valid the Journals of both Houses must show that it was passed in the
presence of a Quorum. See United States v. Balin, Joseph & Co., 144
U.S. 1,3(1892). The Clerk of the House states that the May 12, 1947 vote
was a "voice vote.' But the Parliamentarian of the House states that
a voice vote is only valid when the Journal shows that a quorum is present
and that it's unlawful for the Speaker of the House to sign any enrolled
bill in the absence of a quorum. On May 12, 1947, a Presence of 218 Members
in the hall of the House was required to be entered on the Journal in
order for the 44 Members 38 to 6 voice vote to be legal Therefore, in
essence, our only true authority is derived from the 1948 predecessor
to Public Law 80-722. Although adjudication of the constitutionality
of congressional enactments has generally been thought to be beyond the
jurisdiction of the Federal Administrative agencies, this rule is not
mandatory," according to the Supreme Court in the case of Thunder Basin
Coal Co. v. Reich, 510 U.S. 200, 215(1994). Therefore, the Bureau under
the advice of the Legal Counsel feels that it is in best interest of
public safety to continue addressing all of these Administrative Remedy
Requests by stating that only the Congress or courts can repeal or declare
a federal statute unconstitutional. Signature. Harley G. Lappin. Director,
Federal Bureau of Prisons."

### 5. Judicial Notice Is Taken of the Law of the Case

A. United States v. Ballin, Joseph & Co., 144 U.S. 1,3(1892) (In order for any bill to be valid the Journal of Both Houses must show that it was passed in the presence of a full Quorum).

B. Article I, Section 5, Clause 1 of the Constitution: "Each House shall be the Judge of the elections, returns and qualifications of its own members, and a majority of each shall constitute a Quorum to do business; but a smaller number may adjourn from day to day, and may be authorized to compel the attendance of absent members, in such manner, and under such panalties as each House may provide.

C. State Oil Co. v. Khan ,522 U.S. 3,20(1997)("It is this courts prerogative alone to overrule its own precedent").

D. Carol Ann Bond v. Unites States,131 S.Ct 2355(2011), Ginsberg, concurring opion...That Jurisdiction Trumps Everything: "An offense created by [an unconstitutional law]," the Court has held, "is not a crime." Ex parte Siebold, 100 U.S. 371,376(1880). "A conviction under [such law] is not merely erroneous, but is illegal and void, and cannot be legal cause of imprisonment." Id., at 376,377. If a law is invalid as applied to the criminal defendant's conduct, the defendant is entitled to **GO FREE**.

### HISTORY OF PUBLIC LAW 80-772

1. H.R. 3190 IN THE FIRST SESSION OF THE 80TH CONGRESS.

H.R. 3190 WAS introduced and committed to the Committee of the entire House of Representatives on the State of the Union of the First Session of the 80th Congress entitled "Crimes and Criminal Procedure" See House Report No.304 (April 24, 1947), p. 1. See also 94 Cong. Rec. D556-D557 (Daily Digest)(Charting H.R. 3190). H.R. 3190 differed from "five...bills which...preceded it...[because] it constitute[d] a revision, as well as a codification, of the Federal Laws relating to "Crimes and Criminal Procedure". 93 Cong. Rec. 5048-5049 (MAy 12, 1947). The bill was intended (1)to revise and compile **all** of the criminal law, (2) to "restate" and "consolidate" "existing statutes" (3) to "repeal" "obsolete, superseded, redundant, and repetitious statutes," (4) to coordinate the "Criminal Code" with the "Federal Rules of Criminal Procedure" formerly enacted, and (5) to "clarify and harmonize" penalties of the "many acts" passed by Congress which were found to be "almost identical".

"The bill was ordered to be engrossed and read a third time. was read a third time, and passed" the House on May 12, 1947, pp.343-344 Cong.Rec. 5121, May 13, 1947; Journal of the Senate("Senate Journal"), May 13, 1947, p. 252. [however, the "passage" of the bill, as established by Congressional record was on a vote of 38 to 6. when 435 Members were in Congress and no Quorum was in Session.] The lack of a Quorum voided all actions after that act until a Quorum was properly registered. Hinds' Precedents, § 2939, p. 87 ("The House is not a House without a Quorum")

As passed and enrolled by the House of Representatives H.R. 3190 included at section 3231, Subtitled "District Courts" the following text:

> Offenses against the United States shall be cognizable in the district courts of the United States, but nothing in this Title shall be held to take away or impair the jurisdiction of the courts of the several states under the laws thereof.

H.R. 3190 as passed by the House of Representatives, p. 367, § 3231. See United States v. Sasser, 558 F. Supp. 33-34 (D.MD.1982)

On July 27, 1947, Congress adjourned without the senate passing H.R. 3190. See 93 Cong. Rec. 10439, 10522(July 26, 1947). On November 17, 1947, Congress Reconvened pursuant to a Presidential proclamation. Yet, Congress again "adjourned **sine die** on December 19, 1947," without the Senate passing H.R. 3190. Kennedy v. Sampson, 511 F.2d 430,444 Appendiz n. 4 (D.C. Cir. 1974.

2. H.R. 3190 in the Second Session of the 80th Congress.

The Senate Committee on the Judiciary reported amendments to H.R. 3190 on June 14, 1948, under Sen.Rep. No. 1620. (4 Cong. Rec. 8075(June 14,1948); Senate Journal, June 14, 1948, p. 452(app. 34).[1] Sen. Rep. No. 1620 contained "a large volume of Amendments" and "the new Federal Rules of Criminal Procedure [were] keyed to the bill and [were] reflected in part II of [the new proposed] Title 18." Heralding that, upon passage of the amended bill,"[u]ncertainty will be ended". The Senate wanted "the amendments adopted en bloc," including a new judicial section for Title 18. 94 Cong. Rec. 8721. The report contained only the proposed amendments. See Sen. Rep. No. 1620. p. 1-4.

"[T]he amendments were considered and agreed to ec bloc" and then "ordered to be engrossed." 94 Cong. Rec. 8721-8722(June 18, 1948) Senate Journal, June 18, 1948, p. 506 (H.R. 3190, "as amended," passed the Senate). It was moved that "Senate insist upon its amendments" by the House (94 Cong. Rec. at 8722); and "[o]rdered that theSecretary request the concurrence of the House of Representatives in the amendments." Senate Journal, Supra, p. 506; House Journal, June 18, 1948, p. 688.

The House received the proposed amendments. The Clerk "read the Senate amendments" collectively into the record with which the House concurred. 94 Cong. Rec. 8864-8865(June 18, 1948); House Journal, June 18, 1948, p. 704 ("Said Senate amendments were concurred in."). Although "[t]he House agreed to the amendments to... H.R. 3190" Senate journal, June 18, 1948, p. 510, no action was taken on H.R. 3190 as amended.[2] The Journal of the House of Representatives is devoid of any vote on H.R. 3190 itself on June 18, 1948, and therefore through adjournment on June 20, 1948. Moreover, the official historical chart of H.R. 3190 clearly shows the "only passage" by the House of Representatives occurring on May 12, 1947, and specifically references volume 93 page 5048 of the Congressional Record as the recorderd date the House passed the bill. 94 Cong. Rec. D556-D557 (Daily Digest).

3. H.R. Action After Ajournment

With both Houses adjourned, with NO QUORUM, disassembled and dispersed, Mr.LeCompte, the Chairman of the Committee had found H.R. 3190 "truly enrolled." House Journal, legislative day of June 19, 1948, p. 776(recorded under heading "Bills and Joint Resolutions Enrolled Subsequent to Adjournment").[3] He attached his cetificate of enrollment to the original H.R. 3190 bill passed by the House on May 12, 1947. See H.R. 3190, certified after adjournment as truly enrolled" (as certified by Richard H. Hunt, Director, Center for Legislative Archives, The National Archives, Washington D.C.). Although never certified as truly enrolled, the Speaker and President Pro Tempore respectively signed the Senates amended H.R. 3190 on June 22 and 23, 1948. 94 Cong. Rec. 9353-9354; House Journal, legislative day June 19, 1948, p. 777; Senate Journal, legislative day June 18, 1948 p. 578-579. National Archives & Records Adm. Cert., H.R. 3190 signed by House and Senate officers and President Truman.

The Senate's amended H.R. 3190 was then presented by the Committee on House Administration to President Truman, on June 23, 1948, who signed it on June 25,1948[4], at 12:23 P.M. E.D.T., 94 Cong. Rec. 9364-9367; House Journal, legislative day of June 19, 1948, pp. 778,780-782; Senate Journal, legislative day of June 18, 1948, pp. 579,583. National Archives & Records Adm. Cert., H.R. 3190, Supra; 94 Cong. Rec. D557(Daily Digest).

## 4. The Quorum Violations...May 12, 1947

On may 12, 1947 the House of Representatives voted on H.R. 3190, which then became Public Law 80-772. However, NO QUORUM was in place on that date, as the vote was 38 to 6 and the House had 435 members. Without a Quorum to do business, the vote by the House was UNCONSTITUTIONAL. 93 Cong. Rec. 5048,5049, 5121. Whatever actions occurred after the 38 to 6 vote, including actions related to Public Law 80-772 were illegal until a Quorum was in place. Hinds' Precedents, § 2939, p. 87("The House is not a House without a Quorum").

## 5. June 22 and 23, 1948

After Congress adjourned on June 20, 1948, pursuant to H. Con. Res. 219, a single officer of each House of Congress signed a bill purporting to be H.R. 3190 on June 22-23, 1948, 94 Cong. Rec. 9354; House Journal, legislative day of June 19, 1948, p. 777; Senate Journal, legislative day of June 18, 1948, pp. 578-579, and presented that bill to the President, who signed it on June 25, 1948. 94 Cong. Rec. 9365-9367. Thus the post adjournment signature "provision [of H.Con. 219] was an important part of the legislative scheme," leading to the enactment of Public Law 80-772, without which it would never have "become a law". Bowser v. Synar, 478 U.S. 714,728(1986). Public Law 80-772 falsely stated it was "enacted" while both Houses were "in congress assembled," when in fact Congress was not in Session. See National Archives & Records Adm. Cert., H.R. 3190 as signed into P.L. 80-772.

The bill signed was the Senate's amended H.R. 3190 - a bill never certified as "truly enrolled" compare Pub.L. 80-772, Enactment Clause & Signature pages with H.R. 3190, certified "truly enrolled"'Supra and H.Con.Res. 219 never authorized the signing of unenrolled bills after adjournment. Sen H. Con Res. 219, Supra 62 stst. 1436.

Article 1, & 5, Clause 1 mandates a quorum of both Houses of Congress "to do business." This Constitutional requirement has been enforced by practice, Rules of the House, Customs, Supreme Court holdings and duly enacted statutes.

1 U.S.C. § 101 requires every "enacting clause of all Acts of Congress" to state: "'Be enacted by the Senate and the House of Representatives of the United States of America in Congress assembled.'" Although the bill after passage by "both Houses" must be "enrolled" following which it "shall be signed by the presiding officers of both Houses and sent to the President of the United States," [5] 1 U.S.C. § 106, the actual procedure is regulated by House rules and established practice. Following passage the "Chairman of the Committee of House Administration...affixes to the bills examined a certificate that the bill has been found truly enrolled," [6] House Doc. No. 769, supra, Stages of a Bill, § 983, No. 16, p. [483](App. 79), after which the "enrolled bill is first laid before the House of Representatives and signed by the Speaker... after which it is transmitted to the Senate and signed by the President of that body." Id., No. 17, p. [484][7].

The Supreme Court in Marshall Field & Co. v. Clark, 143 U.S. 649(1892), defined the essence of this procedure:

> The signing by the Speaker of the House of Representatives, and, by the President of the Senate, in open session, of an enrolled bill is an attestation by the two Houses of such bill as one that has passed Congress. It is a declaration by the two houses, through their presiding officers, to the President, that a bill, thus attested, has received, in due form, the sanction of the legislative branch of the government, and that it is delivered to him in obedience to the constitutional requirements that all bills that pass Congress shall be presented to him. 143 U.S. at 672(emphasis added).

1 U.S.C § 106 codified this implicit Constitutional requirement. Reading 1 U.S.C § 101 and 106 together requires that all acts must occur at least through presentment to the President while Congress is in session. That the enrolled bill must be "layed before the House" prior to signing by the Speaker and then "transmitted to the Senate" before the signing by the President of

that body concludes that the respective Houses <u>must be in session during this transaction</u>.[8]

An "adjournment terminates the legislative existence of Congress." Pocket Veto Case, 279 U.S. at 681. "'Th[e] expression, a "House," or "each House," [when] employed ... with reference to the faculties and powers of the two chambers ... always means ... the Constitutional Quorum, assembled for the transaction of business, and capable of transacting business.'" 279 U.S. at 683, quoting I Curtis Constitutional History of the United States, 486 n. 1. Moreover, the term '"House'" means "the House in session" 279 U.S. at 682, and "'as organized and entitled to exert legislative power,' that is, the legislative bodies 'organized conformably to law for the purpose of enacting legislation.'" <u>Id</u>.(quoting Missouri Pacific Railways Co. v. Kansas, 248 U.S. at 276,281(1919)). See also House Doc. No. 335, supra, Hinds' Precedents, § 2939, p. 87("'The House is not a House without a Quorum'")(App. 87).

No "attention" or "declaration of the two Houses ... to the President," Field & Co., 143 U.S. at 672, that H.R. 3190 had "passed" Congress during the adjournment was possible because no such "Houses" Constitutionally existed. See also United States National Bank of Oregon v. Independent Insurance Agents of America, 508 U.S. at 439,455 n. 7(1993)(noting that the rule established in Field & Co., 143 U.S. at 672, made statutory by 1 U.S.C. § 106 turned upon "the 'enrolled bill,' signed in open session by the Speaker of the House of Representatives and the President of the Senate"). Long standing precedence of the House affirms this. House Doc. No. 355,supra, Hinds' Precedents, Vol IV, § 2951. pp.90,91(upon "disclos[ure] ... that there is not a Quorum .., [t]he House thereby becomes Constitutionally disqualified to do further business")

(excepting from disqualification the exceptions stated in Article I, & 5, Clause 1)(emphasis added); id., § 3458, p. 322("The Speaker may not sign an enrolled bill in the absence of a Quorum"); id., at § 3486, pp. 332,333 (recognizing enrollment and presentment to the President to be legislative business required to be completed before adjournment)(App.95-96); id., at § 3487, p.333 n. 3 (presentment to the President is legislative "business" which must be completed before adjournment); id., at § 4788, p. 1026("The presentation of enrolled bills" to the President of the United States is a "transac[tion]" of "business" of the "House.").

Once a bill has passed the House of Representatives it must be printed as a "engrossed bill" which then "shall be signed by the Clerk of the House ... sent to the other House, and in that form shall be dealt with by the House and its officers, and, if passed , returned signed by said Clerk." 1 U.S.C. § 106. In the immediate case H.R. 3190 was "passed" by the House of Representatives on May 12, 1947, engorssed and sent to the senate and there referred to the Senate's Committee on the Judiciary. See 93 Cong. Rec. 5048-5049, 5121; Senate Journal, May 13, 1947, p. 252. However, it was not dealt with or passed "in that form".

Instead amendments were preposed which were "agreed to en bloc," read into the record and "ordered to be engrossed," 94 Cong. Rec. 8721-8722. Then "the [amendment] bill was read the third time and passed". 94 Cong. Rec. 8722; Senate Journal, June 18, 1948, p. 506. The House then concurred in the amendments en bloc. 94 Cong. Rec. 8864-8865; House Journal, June 18, 1948, p. 704.[9]

"The House in which the bill originates enrolls it," House Doc. No. 769,supra, Stages of a Bill, No. 15, p. [438](App. 79), and, in the case of house bills, the "chairman of the Committee on House Administration ... affixes to the bills examined a certificate that the bill has been found truly enrolled," id., No. 16, p. [438], after which it is "laid before the House ... signed by the Speaker [then] transmitted to the Senate and signed by the President of that body." id., No. 17, p. [484]. Unequivocally, "[t]he Speaker may not sign an enrolled bill in the absence of a quorum." House Doc. No. 335,supra Hinds' Precedents, § 3458, p. 322. Cf., id., § 2939, p. 87("The House is not a House without a Quorum.").


The Constitutional Quorum issue is precluded from the Field & Co.'s "enrolled bill rule" by its term – i.e., "[t]he singing ... in open session, of an enrolled bill," 143 U.S. at 672(emphasis added), which in any case only applies in "the absence of [a] Constitutional requirement binding Congress." United States v. Munoz-Flores,supra 495 U.S. at 391 n. 4. Moreover, just as "§ 7 gives effect to all of its Clauses in determining what procedures the Legislative and executive branches must follow to enact a law," id., 495 U.S. at 386(emphasis added by court), so too does Art. I & 5 Clause 1, "provid[e] that no law could take effect without the concorrence of the prescribed majority of the Members of both Houses," INS v. Chadha, 462 U.S. at 949–950, as to all legislative "Business." C.f United States v. Ballin, 144 U.S. 1,3–5(1892)(to determine whether Constitutionally mandated quorum was present for legislative action the Court "assumes" the Journals of the Houses are to be considered to decide the issue).


The bill signed by the Office of the House presented to and signed by

the President of the United States was the Senate's amended bill, which never passed the House. H. Con. Res. 219,supra, 62 Stat. 1436, voiding the signature on the amended bill.[10]

With no Quorum present on may 12, 1947, and all actions after the 38 to 6 vote invalid, the Bill was rendered Constitutionally void. House Doc. No. 769,supra, Constitution of the United States, § 55, p.[19[("[w]hen action requiring a quorum was taken in acertained absence of a quorum ... the action was null and void"); House Doc. No. 355,supra, Hinds' Precedent, § 3497 & 3498, pp. 344-345(such a bill is "not in force" and is "not a valid statute"). Cf. id., Hinds' Precedents, § 2962, p. 94(to vacate legislative act "the absence of a quorum should appear from the Journal")(App. 90).

Article I, & 7, mandates that a bill that has passed both Houses "'shall before it becomes a Law, be presented to the President of the United States..,'" Art. 1, & 7, Clause 2; INS v. Chadha, 462 U.S. at 945, which "can only contemplate a presentment by Congress in some manner,[because] ... [a]t that point the bill in necessarily in the hands of Congress." Thus, presentment is clearly part of the legislative process required as essential to enactment of a bill as law. INS v. Chadha, 462 U.S. at 945,947,951; La Abra Silver Mining Co. v. United States, 175 U.S. 423,454(1889)("After a bill has been presented to the President, no further action is required by Congress in respect of that bill, unless it be disapproved by him. ...")(emphasis added). See House Doc. No. 355,supra, Hinds' Precedents. Vol. IV, § 4788, p. 1026(recognizing that "the presentation of enrolled bills" to the President is a "transact[ion]" of "Business" of the "House"); id., § 3486, p. 332(recognizing presentment required prior to Adjournment); id., § 3487,

p. 333 note 3(when a bill is enrolled or signed by presiding officers "too late to be presented to the President before adjournment" signing and presentment must continue at next session as a "resumption of [Legislative] business," Art. I, & 5, Cl. 1, to be "exercised in accord with [the] single, finely wrought and exhaustively considered, procedure" "prescri[bed] ... in Art. I §§ 1, 7." INS v. Chadha , 462 U.S. at 951.

The "draftsmen" of the Constitution "took special pains to assure these [legislative] requirements could not be circumvented. During the final debates on Article 1 & 7, Clause 2, James Madison expressed concern that it might easily be evaded by a simple expedient of calling a proposal a 'resolution' or 'vote' rather than a 'bill'. As a consequence, Article 1 & 7 Clause 3, ... was added." INS v. Chadha, 462U.S. at 947(citing Farrand,supra, 301-302,304-305).

Whether actions authorized under the resolution are "an exercise of legislative powers depends not on their form but upon 'whether they contain matter which is properly to be regarded as legislative in its character and effect.'" INS v. Chadha,462 U.S. at 952(quoting S. Rep. No. 1335, 54th Cong., 2d Sess., 8 (1887). "If the power is legislative, Congress must exercise it in conformity with the bicameralism and presentment requirements of Art. I & 7." Metropolitan, 501 U.S. at 276 See also Bowsher v. Synar, 478 U.S. at 756(Steven, J., Concurring) ("It is settled, however, that if a resolution is intended to make policy that will bind the nation, and thus is 'legislative in its character and effect,' S. Rep. No. 1335,54th Cong., 2d Sess., 8(1897) – then the full Article I requirements must be observed. For 'the nature or substance of the resolution, and not its form, controls the question of its disposition.' Ibid.").

"'Congress'" of course, "'cannot grant to an officer under its control what it does not possess.'" Metropolitan, 501 U.S. at 275(quoting Bowsher v. Synar, 478 U.S. at 726). Congress does not possess the "'capab[ility] of transacting business'" and is not "'entitled to exert legislative power'" when its "legislative existence" has been "terminate[d]" by an "adjournment" Pocket Veto Case, 279 U.S. at 681-683(citations omitted). "The limitation of power of less than a quorum is absolute," House Doc. No. 355,supra, Hinds' Precidents, Vol V, Ch. CXL, § 6686, p. 851(App. 102), and includes the signing of an enrolled bill by the Speaker of the House, id., Vol. IV, Ch. XCI, § 3458, p. 322, and presentment to the President of the United States. id., Ch. XCII, §§ 3486,3487 & 3497, pp. 332-333 note 3, 344 & 345(App. 95-98). Wright v. United States, 302 U.S. at 583,600(1938)(Stone, J., concurring)("The Houses of Congress, being collective bodies, transacting their routine business by majority are capable of acting only when in session and by formal action recorded in their respective Journals, or by recognition, through such action, of an established practice.") Thus, Congress, as defined by the Constitution and the Supreme Court, never "presented" any version of H.R. 3190 to the President of the United States.

Whether the action taken under H. Con. Res. 219 was an "exercise of legislative power" depends on whether it was essentially "legislative in purpose and effect". INS v. Chadha, 462 U.S. at 952. "In short, when Congress '[takes] action that ha[s] the purpose and effect of altering the legal rights, duties, and relations of persons ... outside the Legislative Branch,' it must take that action by the procedures authorized in the Constitution." Metropolitan, 501 U.S. at 276, quoting INS v. Chadha, 462 U.S. at 952-955. "If Congress chooses to use a [] resolution ... as a means of expediting action,

it may do so , if it acts by both Houses and presents the resolution to the President of the United States," Consumer Energy Council of America v. F.E.R.C., 673 F.2d 425, 476(D.C. Cir. 1982), aff'd mem. sub. nom., Process Gas Consumers Group v. Consumers Energy Council of America, 464 U.S. at 12±6(1983).

The inescapable conclusion as to the "purpose and effect" of H.Coc.Res. 219 was to enact a **bill** the text of which at the time of adjournment on June 20, 1948, had not been passed by both Houses, enrolled, certified as "truly enrolled" or signed by the officers of the House or Presented to the President of the United States with Quorum sitting. In other words H.CON.RES. 219 Unconstitutionally permitted post adjournment legislative business to proceed without Congress and upon an unpassed bill. Congress did not follow the procedures mandated by Art. I & 7 Cl. 2 and attempted to supercede the Quorum requirements of Art. I & 5 Cl. 1 Via a concurrent resolution to cary forth legislative business passed either House "'mask[ed] under ... [the] indirect measure,'" Metropolitan, supra, 501 U.S. at 277(quoting Madison, The Federalist #48, p. 334(J.Cooke 1961 ed.)), of a resolution purporting to authorize continuing legislative action during adjournment with no Quorum and no Congress of an extra Congressional bill. Public Law 80-771 did not "become law" as required by the Constitutional procedures mandated under Article 1, § 5, Clause 1, and Article 1, § 7, Clauses 2 and 3 and is Unconstitutional and void ab initio.

[W]hen action requiring a quorum was taken in the acertained absence of a Quorum ... the action [is] null and void," House Doc. No. 769,supra, Constitution of the United States, § 55, p. [19](citing Hinds' Precedents, Volume IV, § 2964), and "a bill ... not actually passed [although] signed by the President

[is to be] disregarded [requiring] a new bill [to be] passed." House Doc. No. 769, § 103, p. [34](citing Hinds' Precedents, Vol. IV, § 3498)(App. 75).

### 6. The Court Cannot Obtain Jurisdiction from a Prior Statute

Two prior enactments of Title 18 occurred in Congress. In 1940, Congress enacted Title 18, which included its jurisdiction section, 18 USC section 546. However, the Court cannot obtain Jurisdiction pursuant to that statute because it was repealed in 1948. On June 25, 1948 President Truman signed into law Public Law 80-772 enacting into positive law Title 28, United States Code. Act of June 25, 1948, Ch. 646, § 1, 62 Stat. 869. That Act positively repealed the former Criminal Jurisdiction granted to the District Courts. id., § 39 et seq., 62 Stat. 991 et seq.(Positive repeal listing former 28 USC § 41, (in schedule of repealed statutes).

The Courts cannot obtain jurisdiction pursuant to the 1909 enactments of Title 18. That act contained different crimes and penalty provisions than Title 18(1948). Further, the use of that statute would be in violation of the Fair Warning Doctrine:

Fair Warning Doctrine invokes due process rights and requires that criminal statute at issue be sufficiently definite to notify persons of reasonable intelligence that their conduct is criminal. United Stated v. Nevers, 7 F.3d 59(5th Cir. 1993). See United States ex. Rel. Clark v. Anderson, 502 F.2d 1080(3rd Cir. 1974)(This notice requirement of due process would not permit a State, after ruling on of its criminal statutes was overly vague, to apply that statute's superseding predecessor statute in the very case which ruled the successor statute Unconstitutional).

In United States ex. Rel. Clark v. Anderson, 502 F.2d 1080(3rd Cir. 1974), 502 F.2d 1080, 1081-1082, the Court found that at the time the offense occurred and the accused was indicted, "the state of Delaware had published and was holding out the new [statute] as its only proscription of such misconduct as the indictment charged." The crime was also not a crime at common law. The Court ruled the new statute Unconstitutional. **And by definition, an Unconstitutional statute is one that fails to give fair notice that particular conduct is proscribed by statute.** See Unites States v. Harris 1954, 347 U.S. at 612, 617, 98 L.Ed 989, 74 S.Ct. 808; Connally v. General Construction Co., 1926, 269 U.S. 385, 391, 70 L.Ed. 322, 46 S.Ct. 126. Thus, the states own interpretation of the new statute and its rejection of that section as statutory basis for Clark's prosecution caused the Court to hold that the new statute did not provide Constitutionally adequate notice.

The Clark Court determined that the defendant's conviction **could be upheld only if** the old statute, the supercession of which had been legislatively declared and publicly announced, could continue to serve as notice of the criminality of defendant's conduct. In order to reach that conclusion the court decided that one would have to reason, first that the new statute on its face gave adequate notice of its own validity, and second, that the public, thus informed was then put on further notice that the officially announced statutory repeal or supercession of the old statute was legally ineffective. Id.

The Court concluded that such reasoning was "too tortured and too far removed" from reality to satisfy the due process requirement that, at the time of the alleged offence, the accused shall have been on notice that his conduct

was proscribed by the criminal law. The Court could not even surmount the first hurdle that the new statute could serve as notice of its own invalidity. Without that notice, no occasion was available to consider the old statute as possibly relevant.

As in Clark case, and its Supreme Court precedents, to meet Due Process, Public Law 80-772 and 18 USC § 3231 would have had to give adequate public notice on their faces, of their own validity and the public would have had to have been put on further notice that the officially announced statutory repeal or supercession of the old statutes was legally effective. The Court can not even reach the first hurdle, much less the second one. The Court obtained its jurisdiction to prosecute crimes pursuant to Title 18 USC § 3231. Without proper notice of the invalidity of the statute, defendants indictment and any conviction can not be upheld and the Court has only one choice, to order dismissal of defendant's indictment and conviction ab initio.

According to standing precedent, this Court has absolutely no jurisdiction to prosecute defendant under either 18 USC § 3231 or any other enactment.

## Conclusion

No Quorum was present on May 12, 1947 when the House of Representatives voted on H.R. 3190. After the vote of 38 to 6 by the House, all subsequent acts were illegal. This is the smoking gun and is proven by Congressional Records. No Quorum was present on June 22 and June 23, 1948 when the Speaker of the House and President Pro Tempore of the Senate "signed" Public Law 80-772 into Law. Two Quorum violations. Two Constitutional violations. No Law. No Jurisdiction.

This petitioner understands that the case may be resolved under any other found error(s) of procedure within the Petitioners underlying case. The Petitioner is not above the level of agreeing with an alternative form of relief, if the Respondent should discover such, and the Courts should agree.

Further the Supreme Court has made it clear [343 US 596], A plaintiff is not entitled to injunction if money damages would fairly compensate him for any wrong he may have suffered." This is the basis of the Petitioners claims for relief, as follows.

Citing Youngstown: 96 LED 1153, 343 US 594 "The accretion of dangerous power does not come in a day. It does come, however slowly, from the generative force of unchecked disregard of the restrictions that fence it even the most disinterested assertion of authority."

President TRUMAN knew this, the Supreme Court knew this, yet the Petitioner makes the assertion to the facts, supporting that, one man forever changed this great nation for the worse. This Court owes owes a duty to proceed with the caution and concern required to address such a "sensitive" challenge to the Backbone of the most Free Nation in the World. "At the first sound of a new argument over the United States Constitution and its interpretation the hearts of Americans leap with fearful joy. The blood stirs powerfully in their veins and a new luster brightens their eyes. Like King Harry's men before Harfleur, they stand like greyhounds in the slips, straining upon the start." The Economist, May 10, 1952, P. 370 (From Youngstown at 343 US 595)

Honorable Court, this is the same "fearful joy", this petitioner is approaching the Courts with today. My Country ... Our Countrt ... is the Greatest Nation of Laws in the World. We owe it to our ancestors and our future generations, to assure the Nation, as it was built upon, the pure foundation of Constitutional Laws, maintains, and stays in place. Or else we are nothing better than a Nation of Opinions. And that is how a Free Nation remains Free. "The path of duty for this court, it bears repitition, lies in the opposite direction. Due regard for the implications of the distribution of powers in our Constitution and for the nature of the judicial process as the ultimate authority in interating the Constitution, has not only confined the Court with the narrow domain of appropriate adjudication." [343 US 595].

This Petitioner closes with the following facts. The records are clear, that only 44 votes were recorded regarding H.R. 3190. Long standing cases like Marshall Fields, Public Citizens, (2006), show that a Quorum is not made up of 44 votes. That would be a denial of minimally 160 required votes, in order to lawfully pass a bill. This on May 12, 1947. Add to the fact that not one party entered their names within the recordered 44 votes. Going forward on June 1948, not one record shows how many votes were given as to the "amendments" of the already dead bill, In other words, the House and Senate allegedly reviewed and then agreed to changes on a dead bill, then offered no "repassing" votes ? Impossible to believe. And to further add insult to injury, we discover in the 1st Session of the 81st Congress, that

H.R. 3190 is still "proposed revision" Andres v. United States 92 LED 1055, [this is noted at 33 US 765 by the Supreme Court in a decision handed down April 26, 1948.

The Petitioner again reminds the Court that, "Congress in 1947 was again called upon to consider whether governmental seizure should be used to avoid serious industrial shutdowns. Congress decided against conferring such power generally and in advance, with out special Congressional enactment to meet each particular need." In otherwords, President Truman had shown us clearly, he wanted the power of this nation, and even when he could not gain access to that power legislatively, he (See Youngstown) once challenged, decided to take it any way he could. Hence the Youngstown Case. The Supreme Court found the use of Executive authority, which had been shot down "A proposal that the President be given powers to seize plants to avert a shutdown where the "health and safety" of the nation were endangered, was thoroughly canvassed by Congress and rejected", however President TRUMAN "soldiered on" and grabbed his power in other ways. This same disregard for Congressional enacted power, is what this Petitioner is bringing to the Court and Jury in this case. Further and Finally, "Instead of giving him even limited powers, Congress in 1947 deemed it wise to require the President, upon failure of attempts to reach a voluntary settlement, to report to Congress if he deemed the power of seizure a needed shot for his locker. The President could not ignore the specific limitations of prior seizure statutes. No more could he act in disreguard of the limitation put upon seizure by the 1947 Act." [343 US 602] Youngstown.

However, in the case of H.R. 3190, the records of Journals show clearly that "disregard" is exactly what the TRUMAN presidency did. in regards to the passing of Title 18, 1-5037. Therefore, the Petitioner rest his arguments, and is prepared to take this to a trial forum for decisions.

<u>RELIEF</u>

In closing, the Petitioner offers the following facts for Relief.

1) The Petitioner Requests his immediate release due to the facts argued.

2) The petitioner Requests $3,500.00 per day of illegal incarcerations.

3) The Petitioner Requests a full expungement of his NCIC report.

4) The Petitioner Requests all money awards to be tax exempt and a government tax letter to support this be peovided.

5) The Petitioner Requests that he never pay taxes again.

The Petitioner is Applying for Relief as outlined and will concede to a settlement with the Respondent without going to Trial. Further the Petitioner make it known that this Petition may be sealed should the Courts fell it necessary for "Public Safety".

Respectfully Submitted this 13th day of February, 2017,

_Timothy Peterson_
Respondent

The Petitioner states and certifies that a copy of this has been mailed to the Attorney General of the United States as is required pursuant ro Rule 5.1

_Timothy Peterson_
Petitioner

The Petitioner states that the aforementioned facts are true and correct to the best of my knowledge, and are submitted to this Court under penalty of perjury.

_Timothy Peterson_
Petitioner

TIMOTHY PETERSON
FCI ENGLEWOOD
9595 W.QUINCY AVE.
LITTLETON,CO   80123

Foot Notes

1. The Senate approved its Journal for June 14, 1948. Senate Journal, June 15, 1948, pp. 461-462

2. The House approved the Journal for June 18, 1948, House Journal, p. 714(June 19, 1048, approving Journal for "Legislative day of ... June 17, 1948" - i.e., calendar day June 18, 1948); id., at p. 669 (showing Friday June 18, 1948, as "Legislative day of ... Thursday, June 17, 1948") and the Senate approved its Journal for June 18, 19 and 20, 1948. Senate Journal, July 26, 1948, p. 593.

3. Mr. Lecompte's announcement was reported upon reconvention by the President's Proclamation on July 26, 1948. 94 Cong. Rec. 9363.

4. That same day President Truman signed into law Public Law 80-773 enacting into positive law Title 28, United States Code. Act of June 25, 1948, Ch. 646 § 1, 62 Stat. 869. That Act positively repealed the former criminal jurisdiction granted to the District Courts. id., § 39 et seq., 62 Stat. 991 et seq. (positive repeal listing former 28 USC § 41, 2 in schedule of repealed statutes).

5. 1 USC § 106 contains an exception for enrollment "[d]uring the last six days of a session," but no exception for enrolling, signing or presenting a bill to the President otherwise other than during the sitting of Both Houses.

6. Formerly, the "Chairman of the Committee of Enrolled Bills" performed his critical task in the legislative business of enacting a bill, which has always required the enrolled bill to be "placed before the House and signed by the Speaker." See House Doc. No. 355, 59th Congress 2nd Session, Hinds' Precedents of the house of Representatives, Ch. XCI, § 3429, notes 3 & 5, p. 311(G.P.O. 1907). See House Doc. No. 769,supra, preface, p. [VI]("The ruling of the Speaker of the House and of the Chairman of the Committee of the Whole are to be rules of the House what the decisions of the Courts are to the Statutes ... 3which are] embodied in the monumental work[s] of Hinds and Canon.").

7. The Supreme Court not only takes judicial notice of the legislative history of a bill, Alaska v. American Can Co., 358 U.S. at 224, 226-227(1959), but will both judicially notice and "h[o]ld" Congress and its legislative committee "to observance of its rules." Yellin v. United States, 374 U.S. at 109, 114(1963).

8. "[T]he Constitution has left it to Congress to determine how a bill is to be authenticated as having passed" and "the courts accept as passed all bills authenticated in the manner provided by Congress." United States v. Munoz-Flores, 495 U.S. at 385, 391 n. 4(1990)(citing Field & Co. v. Clark, 143 U.S. at 649(1892), in which case the Court established the so-called "enrollment bill rule" - a ru;e not applicable in this case, but a ruling that supports Petitioners' claims.)

9. This contravenes the procedures of the House of Representatives for the 80th Congress. "When a bill with Senate amendments comes before the House, the House takes up each amendment by itself ..." House Doc. No. 769, Stages of a bill in the House, § 983, No. 13 P.[483].

Foot Notes page 2

10. On July 26, 1948, "Mr. Lecompte, from the Committee on House Administration, reported that the Committee had examined and found" H.R. 3190 had been "truly enrolled." 94 Cong. Rec. 9363. The version of H.R. 3190 certified as "truly enrolled" by Mr. LeCompte, is the House version passed on May 12, 1947, with the text of the original § 3231 - the text of which was never passed by the Senate - to which his certificate of enrollment is attached. The statutory mandate after final passage and printing to "call[]" the bill in such final form "the enrolled bill" 1 USC § 106, Act of July 30, 1947, Ch.388, Ch. 2, 61 Stat. 634, is determined by "sign[ing] by the presiding officers of both Houses and sen[ding] to the President of the United States." 1 USC § 106.